# MASTER GROUP CONTRACT

## Between

## BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA

## AND

## St. John's Fire District

## GROUP NUMBER 25-53784-00 and appropriate subgroups

This Master Group Contract ("Contract") is effective this 1st day of May, 2013 between Blue Cross and Blue Shield of South Carolina (the "Corporation"), a mutual corporation incorporated under the laws of the State of South Carolina, and St. John's Fire District, (the "Employer").

WHEREAS, the Employer desires to establish the Preferred Blue® Plan of Benefits (the "Plan of Benefits") (attached hereto and incorporated by reference) to provide certain health insurance Benefits (as defined in this Plan of Benefits) to its Employees (as defined in this Plan of Benefits); and

WHEREAS, in consideration of the Premium (as defined in this Plan of Benefits) the Corporation has agreed to administer this Plan of Benefits and provide the services set forth in this Contract.

NOW, THEREFORE, in consideration of their mutual promises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Corporation and the Employer agree as follows:

1.      Definitions.

Capitalized terms that are used in this Contract, but are not defined herein, have the meaning ascribed to such terms in this Plan of Benefits.

2.      Employer Responsibilities.

A.      To pay the Corporation in advance for the services provided by the Corporation under this Contract, by remitting to the Corporation monthly Premiums (as defined in this Plan of Benefits) in the amounts set forth in Schedule A (attached hereto and incorporated by reference) and any subsequent amendments thereto.

B.      To grant to the Corporation access to the Employees at such reasonable times and for such reasonable period of time as may be agreed to between the Corporation and the Employer, provided that the available access times shall include at least one (1) period annually.

C.      To ensure at least 51 Employees or 75% of all eligible Employees, whichever is greater, must be enrolled under this Plan of Benefits throughout its duration

D.      To abide by all the terms and conditions of this Contract, this Plan of Benefits and this Schedule of Benefits.

E. To provide the Corporation with such information as the Corporation may reasonably request from time to time that the Corporation deems necessary to perform its duties under this Contract.

F. To distribute creditable coverage certificates for prior prescription drug coverage as required by the Centers for Medicare and Medicaid Services to any eligible Employees. See Article II of this Plan of Benefits for health Certificates of Creditable Coverage.

3. <u>Corporation Services.</u>

The Corporation hereby agrees to provide the coverage described in this Plan of Benefits, subject to the terms, conditions, and limitations of this Contract, this Plan of Benefits and this Schedule of Benefits after receipt of the initial Premium Payment.

4. <u>Initial Premium Payment.</u>

The initial Premium shall be paid before this Plan of Benefits Effective Date (as defined in this Plan of Benefits). Subsequent Premiums are due and payable on or before the same date of each month thereafter. In no event shall coverage become effective until the Corporation receives the initial premium payment. The Corporation will provide at least a thirty-one (31) day notice prior to any increase in Premium. Payment of Premium shall constitute the Employer's acceptance of the terms of this Contract (including this Plan of Benefits and the Schedule of Benefits) regardless of the absence of the Employer's signature.

5. <u>Term.</u>

This Contract has a one-year term. This Contract shall renew automatically each year on the annual anniversary of the Employer Effective Date unless the Employer gives written notice of termination at least thirty-one (31) days before the automatic renewal date. The rates charged by the Corporation may change, and the current effective rates are stated in Schedule A, as updated by the Corporation from time to time.

6. <u>Termination.</u>

A. <u>Termination for Failure to Pay Premiums.</u>

i. If the Premium remains unpaid after the Grace Period, this Contract and this Plan of Benefits shall automatically terminate, without prior notice to the Employer, immediately after the last day of the Grace Period.

ii. If a subgroup fails to pay the Premium after the Grace Period, this Contract and this Plan of Benefits for that subgroup shall automatically terminate, without any prior notice to the Employer, for nonpayment of Premium, immediately after the last day of the Grace Period. Additionally, the Corporation retains the right to terminate this Plan of Benefits for the entire group in the event a subgroup fails to pay their portion of the Premium.

iii. During the Grace Period the Corporation will pay the Covered Expenses for Benefits obtained by Members during the Grace Period.

iv. In the event of termination for failure to pay the Premium, any Premium received by the Corporation after the Grace Period will not automatically reinstate this Contract or this Plan of Benefits absent written agreement by the Corporation. The Corporation will refund the amount of any late Premium paid if this Contract or this Plan of Benefits is not reinstated, except that portion relating to coverage provided during the Grace Period.

B. Termination For Noncompliance.

If the Employer breaches any material provision of this Contract or this Plan of Benefits related to contribution or participation rules, the Corporation may terminate this Contract and this Plan of Benefits and coverage will terminate on the date given by the Corporation in written notice to the Employer.

C. Termination For Lack of Membership.

If there is no longer any Member who lives, resides or works in South Carolina or in an area in which the Corporation is authorized to do business, the Corporation may terminate this Contract and this Plan of Benefits and coverage will terminate on the date given by the Corporation in written notice to the Employer.

D. Termination For Fraudulent Misstatement.

i. The Corporation may terminate an individual Member's coverage under this Plan of Benefits if in the Membership Application (or on any document requesting information concerning the Member's health or eligibility status) the Member (or the Member's representative) makes any intentional or fraudulent misrepresentations that are either material to acceptance of coverage of the individual or was material to the risk or the hazard assumed, or if the Member misuses such Member's Identification Card. Coverage for the Member (and Members who are Dependents of such Member) will terminate under this paragraph on the date specified by the Corporation in any written notice of termination to the Employer.

ii. The Corporation may terminate this Contract and coverage for all Members under this Plan of Benefits if the Employer makes any intentional or fraudulent misrepresentation in the course of applying for coverage. Coverage will terminate under this paragraph on the date specified by the Corporation in written notice of termination to the Employer.

E. Uniform Termination of Coverage.

i. The Corporation may terminate this Contract and coverage under this Plan of Benefits if the Corporation:

a. Ceases to offer coverage of the type of group health insurance coverage provided by this Plan of Benefits and provides notice to the Employer and Members at least ninety (90) days prior to the date of the discontinuation of such coverage; and

b. Offers to each employer provided coverage of the type described in this Plan of Benefits in such market the option to purchase any other group health insurance currently being offered by the Corporation to a Group Health Plan in such market; and

        c.      Acts uniformly without regard to the claims experience of the Employer or any Health Status-Related Factor relating to any Members or Employees or Dependents who may become eligible for coverage under this Plan of Benefits.

    ii.     If the Corporation elects to discontinue offering all group health insurance coverage in South Carolina, this Contract and coverage under this Plan of Benefits may be discontinued by the Corporation only in accordance with applicable state law and if:

        a.      The Corporation provides notice to the Department of Insurance and to each affected employer and Members of such discontinuation at least one hundred eighty (180) days prior to the date of the discontinuation of coverage; and

        b.      All group health insurance coverage issued or delivered for issuance in South Carolina is discontinued and coverage under such health benefit coverage in such market is not renewed; and

        c.      The Corporation will not issue any group health insurance coverage in South Carolina during the 5-year period beginning on the date of the discontinuation of the last health insurance coverage not renewed.

F.    <u>Notice of Termination to Members.</u>

Other than as expressly required by law, if this Contract or this Plan of Benefits is terminated for any reason, the Employer is solely responsible for notifying all Members of such termination and coverage of Members will not continue beyond the termination date. The Employer agrees to indemnify and hold the Corporation harmless for all damages, claims, causes of action, costs and expenses (including a reasonable attorney's fee) arising out of or relating to the Employer's failure to notify Members of termination of this Contract or this Plan of Benefits, or any other notification required to be given to Members by the Employer.

7.    <u>General Provisions.</u>

A.    <u>Amendment</u>.  Upon thirty (30) days prior written notice, the Corporation may unilaterally amend this Contract or this Plan of Benefits when required by Federal or State law. Increases in the Benefits provided or decreases in the Premium are effective without such prior notice.  Notice of an amendment will be effective when addressed to the Employer.  The Corporation has no responsibility to provide individual notices to each Member when an amendment to this Contract or this Plan of Benefits has been made.

B.    <u>Assignment</u>.  The Employer shall not assign its interest in this Contract without the prior written consent of the Corporation, which may be granted or withheld in the Corporation's sole discretion.

C.    <u>Benefit Booklets</u>.  The Corporation will issue individual benefit booklets to the Employer for distribution to the Members.

D.     <u>Binding Agreement</u>. This Contract, this Membership Application, this Plan of Benefits, this Schedule of Benefits and any attached endorsements, amendments and riders, if any, constitute the entire agreement between the Corporation and the Employer and supercedes all prior negotiations, representation, or agreements as well as any previous oral or written agreement between the parties. All such prior negotiations, representations, or agreements are merged into this Contract.

E.     <u>Claims Fiduciary</u>. If this Plan of Benefits is deemed to be an integral part of an employee welfare benefit plan subject to the provisions of ERISA, the Corporation is a claims fiduciary. As claims fiduciary, the Corporation shall have the sole discretionary authority to determine eligibility for Covered Expenses and to construe the terms of the ERISA plan represented by this Plan of Benefits. Any judicial review of a decision of the Corporation shall be conducted under the arbitrary and capricious standard of review with deference given to the Corporation's decision.

F.     <u>Governing Law</u>. Subject to, and to the extent permitted by ERISA, this Agreement shall be construed in accordance with the laws of the State of South Carolina and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of South Carolina without giving effect to internal choice of law or conflict of law rules. This Agreement is made in the State of South Carolina.

G.     <u>Identification Card</u>. At the Employer's discretion, the Corporation will issue Identification Cards to either the Employer or directly to the Members.

H.     <u>Indemnification</u>. The Employer agrees to indemnify and hold harmless the Corporation and its directors, officers and employees from any and all claims, lawsuits, settlements, judgments, costs, penalties, liabilities, expenses (including Covered Expenses), and attorneys' fees (for attorneys chosen by the Corporation), resulting from, or arising out of, based on or in connection with the Employer's breach of any provision or term of this Contract or this Plan of Benefits, unless it is determined that the liability therefore was solely the direct consequence of criminal conduct, fraud, or willful misconduct on the part of the Corporation or any of its directors, officers or employees.

I.     <u>List of Members</u>. The Employer shall furnish to the Corporation a list of Members, together with such data as may be required by the Corporation as a prerequisite to coverage under this Plan of Benefits. The Employer is solely responsible for furnishing, in such a manner as required by the Corporation, the information that is required by the Corporation for the purpose of enrolling additional Employees under this Contract and this Plan of Benefits, processing requests to terminate coverage, and effecting changes in Dependent and membership status.

J.     <u>Member of Corporation</u>. The holder of this Contract is a member of Blue Cross and Blue Shield of South Carolina and is entitled to vote in person or by proxy at any and all meetings of said Corporation. This is a non-assessable contract and the holder is not subject to any contingent liability. The annual meeting of the members shall be held at the home office of the Corporation on the third Thursday in April at 11:00 A.M., Eastern Standard Time.

K.     <u>Modification</u>. This Contract may only be modified or changed in a written document signed by the authorized representative of the Corporation.

L.     <u>Plan Administrator</u>. The Employer is the Plan Administrator, and is solely responsible for administration of the Employer's Health Plan.

M.  Reinstatement of this Plan of Benefits.  The Corporation in its sole discretion (and upon such terms and conditions as the Corporation may determine) may reinstate coverage under this Plan of Benefits that has been terminated for any reason.

N.  Statements.  All statements made by the Employer are representations and warranties and the Corporation relies on such statements in entering into this Contract. The Employer agrees to furnish the Corporation with accurate information and understands that the Corporation will rely upon this information.

O.  Waiver.  The failure of either party hereto to insist upon strict performance of any of the terms or conditions of this Agreement shall not be deemed to be a waiver of any rights or remedies of such party in respect of any other provision hereof or in respect of any subsequent breach or default under such term or condition.

P.  Waiver of Jury Trial. In any action based on this Contract (whether based in contract, tort, equity, or otherwise) the parties to this Contract hereby knowingly waive any right to a jury trial to which they otherwise might have been entitled.  Additionally, the parties to this Contract hereby knowingly waive their right to maintain any action based on this Contract (whether based in contract, tort, equity, or otherwise) as a class action.

Q.  Audit.  During the term of this Agreement and for a period of six (6) months following its termination, the Employer, or its designated claims auditing representative, if reasonably approved by the Corporation in writing, shall have the right to examine the records of the Corporation relating to premium billing statements and Member enrollment information during regular business hours at the Corporation's offices, and upon sixty (60) days prior notice.  The Employer shall not be entitled to any examination of an individual Member's health benefit payment records, claims payment processes or claims payment amounts. All audits shall be limited to information relating to the calendar year in which the audit is conducted and/or the immediately preceding calendar year.  The Employer shall pay any expenses that it incurs and shall be charged an additional fee, determined by the Corporation, for each on-site audit. The Employer shall also pay any expenses incurred by the Corporation in connection with the Employer's audit.

R.  Notices.  All notices or reports permitted or required under this Agreement shall be in writing and shall be delivered by personal delivery, by certified or registered mail, return receipt requested, or by a reputable overnight mail service, and shall be deemed given upon personal delivery, one (1) day following deposit with an overnight mail service, five (5) days after deposit in the mail.  Notices shall be sent to the address set forth below or to such other address as either party may specify in writing.

BlueCross BlueShield of South Carolina
I-20 @ Alpine Road
Columbia, S.C.  29219

S.  Member Information.    The Employer represents and certifies that it is solely responsible for and has obtained consent from all Members authorizing the release of Protected Health Information (as defined in 45 C.F.R. § 164.501) by the Corporation to the Employer or, the Employer otherwise has the legal authority to review, access, and/or use such information.

(a) The Employer will only use claims information provided by the Corporation to administer the Employer's health plan.  This may include monitoring and evaluating the costs and performance of the Corporation and the Employer's health plan.  The Employer will not use any information provided by the Corporation for any improper or illegal or unauthorized purpose.

(b) The Corporation is prohibited from releasing alcohol and drug abuse patient information protected under 42 U.S.C. § 290dd-2(a) et. seq. to the Employer.

(c) If the Employer accesses the Benefit Coordinator features of My Insurance Manager, it will ensure that Protected Health Information is only accessed while the individual whose information is being accessed is present or such individual has otherwise consented to such access.

(d) The Employer will protect and safeguard the integrity, privacy and confidentiality of all Protected Health Information in accordance with all federal and state laws, regulations and guidelines governing and applicable to Protected Health Information. The Employer will only use or further disclose Protected Health Information for the purpose for which the Corporation disclosed it to the Employer or as required by law, and will promptly notify the Corporation of any instance of which the person or organization becomes aware in which the confidentiality of such PHI was breached.

(e) The Employer, as the plan sponsor of its group health plan, has amended the plan document to comply with the requirements of 45 CFR Section 164.504(f)(2).

(f) Nothing contained herein shall obligate the Corporation to provide Protected Health Information to the Employer.

T.  Confidential Information. The Corporation and the Employer hereby agree to treat any information disclosed to each other as Confidential Information.

(a) The parties agree that each will keep the other party's Confidential Information confidential and will only use the disclosing party's Confidential Information for purposes contemplated under this Agreement; provided, however, that the Corporation may use the Employer's Confidential Information in the ordinary course of its business as long as it maintains the confidentiality of such information. Neither party will use the Confidential Information in any manner, other than as provided in this Agreement.

(b) Confidential Information disclosed pursuant to this Agreement is and shall remain the disclosing party's property.

(c) If, in the opinion of counsel for the receiving party, disclosure of Confidential Information is required by any federal or state law, the receiving party may only make such disclosure after notifying the disclosing party (if allowed by law) of the receiving party's intention to disclose the Confidential Information ten (10) days prior to making such disclosure.

(d) The terms of this Section 7(T) shall survive the termination of this Agreement for a period of five (5) years following the date of termination.

U.  The Employer, on behalf of itself and the Members, hereby expressly agrees that:

(a) This Agreement constitutes a contract solely between the Employer and the Corporation; and,

(b) The Corporation is an independent corporation operating under a license with the Association permitting the Corporation to use the Blue Cross and Blue Shield service mark in the State of South Carolina; and,

(c) The Corporation is not contracting as the agent of the Association nor is the Corporation authorized to contract on behalf of the Association; and,

(d) The Employer has not entered into this Agreement based upon representations by any person other than the Corporation; and,

(e) No person, entity or organization other than the Corporation shall be held accountable or liable to the Employer for any of the Corporation's obligations to the Employer created under this Agreement.

**IN WITNESS WHEREOF**, Blue Cross and Blue Shield of South Carolina and the Employer have caused their names to be signed hereto by their respective officers.

**BLUE CROSS AND BLUE SHIELD
OF SOUTH CAROLINA**
An Independent Licensee of the Blue Cross
and Blue Shield Association

By: _____

Title:    President
          Blue Cross and Blue Shield Division


Address:      I-20 @ Alpine Road
              Columbia, S.C.  29219

Date: _____May 10, 2013_____

**EMPLOYER: ST. JOHN'S FIRE DISTRICT**

By: _____

Title: _____

Address: _____

_____

_____

Date: _____

## CONSOLIDATED OMNIBUS RECONCILIATION ACT ("COBRA") AND INTERNAL REVENUE CODE SECTION 125 PLAN ("125 PLAN") AMENDMENT

**Employer Name:** St. John's Fire District
**Employer Number**: 25-53784-00 and appropriate subgroups
**Effective Date:** 05/01/2013

**Section 2, Employer Responsibilities, in the Master Group Contract is amended by the addition of the following:**

H.   Consolidated Omnibus Reconciliation Act ("COBRA"):

   If Employer purchases COBRA Services from BCBSSC, Employer shall provide BCBSSC notice (in a format reasonably acceptable to BCBSSC) within ninety (90) days of any new employees and within thirty (30) days of a member's qualifying event.

I.   Internal Revenue Code Section 125 Plan ("125 Plan"):

   If Employer purchases 125 Plan Services from BCBSSC, Employer shall:

   (a)   Sponsor and encourage employee support of the 125 Plan.
   (b)   Provide BCBSSC (in a format reasonably acceptable to BCBSSC) any necessary employee payroll, census, benefit information and any other information reasonably requested from time to time by BCBSSC.
   (c)   Be responsible for creation of any 125 Plan documents.
   (d)   At all times be responsible for contributions to the 125 Plan and funds held by the 125 Plan.
   (e)   Report participant terminations and changes of family status to BCBSSC.
   (f)   Reconcile payroll amounts redirected to the 125 Plan.
   (g)   Complete and file Form(s) 5500 with the IRS each plan year.
   (h)   At all times be responsible for compliance with regulatory requirements related to discrimination and initiate any action required in the event the 125 Plan becomes discriminatory.
   (i)   Distribute funds according to the requirements of the 125 Plan.

**Section 3, Corporation Services, in the Master Group Contract is amended by the addition of the following:**

B.   COBRA Obligations:

   If Employer purchases COBRA Services from BCBSSC, BCBSSC shall:

   (a)   Mail the initial COBRA rights notice (as approved by the Department of Labor) to the member or dependent under the Plan.  A separate COBRA rights notice will be mailed to the covered spouse if applicable.
   (b)   Send the appropriate COBRA notice and election forms to the qualified beneficiaries and monitor the election period for the COBRA beneficiaries upon notice of a qualified member.
   (c)   Bill and collect the initial premium payment covering the period during which coverage would have normally ended to the date the beneficiary elects COBRA continuation.

(d) Bill and collect the monthly premiums from the COBRA beneficiaries who elected continuation of coverage beginning with the first monthly premium due after notice of continuation coverage is made by the beneficiary.

(e) Monitor the appropriate continuation of coverage period for each beneficiary and disenroll the beneficiary at the end of the period of continued coverage.

(f) Send conversion notices to eligible COBRA beneficiaries during the last 180 day period of their COBRA continuation of coverage period, provided that a conversion option is included in their Plan of Benefits.

(g) Not be responsible for giving notice to the COBRA continuants of any open enrollment periods as well as the available benefit plan options and applicable premium rates for the periods.

C.    125 Plan Obligations:

If Employer purchases 125 Plan Services from BCBSSC, BCBSSC shall:

(a) Provide sample announcement letters, sample communications materials for employee education and annual enrollment materials as requested by the Employer.

(b) Process employee reimbursement requests as directed by the Employer and in accordance with IRS guidelines.

(c) Provide toll-free customer service access via telephone.

(d) Provide standard monthly reports for reconciling amounts redirected to the 125 Plan. Standard monthly reports include:
    a.  Reports detailing the monthly administrative fees;
    b.  Reports detailing billing for employees; and
    c.  Reports detailing employees' elections and participation.

(e) Not have any obligation or duty to maintain any accounts or handle funds on behalf of the Employer.

**BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA**
An Independent Licensee of the Blue Cross and Blue Shield Association

By: _____
Title:    President
     Blue Cross and Blue Shield Division

THIS IS AN AMENDMENT TO YOUR PRESENT PLAN OF BENEFITS.