4. The Corporation must receive the claim within ninety (90) days after the beginning of services. Failure to file the claim within the ninety (90) day period, however, will not prevent payment of Covered Expenses if the Member shows that it was not reasonably possible to file the claim timely, provided the claim is filed as soon as is reasonably possible. Except in the absence of legal capacity, claims must be filed no later than fifteen (15) months following the date services were received.

5. Receipt of a claim by the Corporation will be deemed written proof of loss and will serve as written authorization from the Member to the Corporation to obtain any medical or financial records and documents useful to the Corporation (as determined by the Corporation). The Corporation, however, is not required to obtain any additional records or documents to support payment of a claim and is responsible to pay claims only on the basis of the information supplied at the time the claim was processed. Any party who submits medical or financial reports and documents to the Corporation in support of a Member's claim will be deemed to be acting as the agent of the Member. If the Member desires to appoint an Authorized Representative in connection with such Member's claims, the Member should contact the Corporation for an Authorized Representative form.

6. There are four (4) types of claims: Pre-Service Claims, Urgent Care Claims, Post-Service Claims, and Concurrent Care Claims. The Corporation will make a determination for each type of claim within the following time periods:

   a. Pre-Service Claim.

      i. A determination will be provided in writing or in electronic form within a reasonable period of time, appropriate to the medical circumstances, but no later than fifteen (15) days from receipt of the claim.

      ii. If a Pre-service Claim is improperly filed, or otherwise does not follow applicable procedures, the Member will be sent notification within five (5) days of receipt of the claim.

      iii. An extension of fifteen (15) days is permitted if the Corporation determines that, for reasons beyond the control of the Corporation, an extension is necessary. If an extension is necessary, the Corporation will notify the Member within the initial fifteen (15) day time period that an extension is necessary, the circumstances requiring the extension, and the date the Corporation expects to render a determination. If the extension is necessary to request additional information, the extension notice will describe the required information. The Member will have at least forty-five (45) days to provide the required information. If the Corporation does not receive the required information within the forty-five (45) day time period, the claim will be denied. The Corporation will make its determination within fifteen (15) days of receipt of the requested information, or, if earlier, the deadline to submit the information. If the Corporation receives the requested information after the forty-five (45) days, but within 225 days, the claim will be reviewed as a first level appeal. Reference Article XI B for details regarding the appeals process.

    b. Urgent Care Claim.

i. A determination will be sent to the Member in writing or in electronic form as soon as possible taking into account the medical exigencies, but no later than seventy-two (72) hours from receipt of the claim.

ii. If the Member's Urgent Care Claim is determined to be incomplete, the Member will be sent a notice to this effect within twenty-four (24) hours of receipt of the claim. The Member will then have forty-eight (48) hours to provide the additional information. Failure to provide the additional information within forty-eight (48) hours may result in the denial of the claim.

iii. If the Member requests an extension of Urgent Care Benefits beyond an initially determined period and makes the request at least twenty-four (24) hours prior to the expiration of the original determination period, the Member will be notified within twenty-four (24) hours of receipt of the request for an extension.

c. Post-Service Claim.

i. A determination will be sent within a reasonable time period, but no later than thirty (30) days from receipt of the claim.

ii. An extension of fifteen (15) days may be necessary if the Corporation determines that, for reasons beyond the control of the Corporation, an extension is necessary. If an extension is necessary, the Corporation will notify the Member within the initial thirty (30) day time period that an extension is necessary, the circumstances requiring the extension, and the date the Corporation expects to render a determination. If the extension is necessary to request additional information, the extension notice will describe the required information. The Member will have at least forty-five (45) days to provide the required information. If the Corporation does not receive the required information within the forty-five (45) day time period, the claim will be denied. The Corporation will make its determination within fifteen (15) days of receipt of the requested information, or, if earlier, the deadline to submit the information. If the Corporation receives the requested information after the forty-five (45) days, but within 225 days, the claim will be reviewed as a first level appeal. Reference Article XI B for details regarding the appeals process.

d. Concurrent Care Claim.

The Member will be notified if there is to be any reduction or termination in coverage for ongoing care sufficiently in advance of such reduction or termination to allow the Member time to appeal the decision before the Benefits are reduced or terminated.

7. Notice of Determination.

a. If the Member's claim is filed properly, and the claim is in part or wholly denied, the Member will receive notice of an Adverse Benefit Determination that will:

i. State the specific reason(s) for the Adverse Benefit Determination;

ii. Reference the specific Plan of Benefits provisions on which the determination is based;

iii. Describe additional material or information, if any, needed to complete the claim and the reasons such material or information is necessary;

iv. Describe the claims review procedures and this Plan of Benefits and the time limits applicable to such procedures, including a statement of the Member's right to bring a civil action under section 502(a) of ERISA following an Adverse Benefit Determination on review;

    v. Disclose any internal rule, guideline, or protocol relied on in making the Adverse Benefit Determination (or state that such information is available free of charge upon request); and,

    vi. If the reason for denial is based on a lack of Medical Necessity or Investigational or Experimental Services exclusion or similar limitation, explain the scientific or clinical judgment for the determination (or state that such information will be provided free of charge upon request).

  b. The Member will also receive a notice if the claim is approved.

**B. APPEAL PROCEDURES FOR AN ADVERSE BENEFIT DETERMINATION**

1. The Member has one hundred eighty (180) days from receipt of an Adverse Benefit Determination to file an appeal. An appeal must meet the following requirements:

  a. An appeal must be in writing; and,

  b. An appeal must be sent (via U.S. mail) to Blue Cross and Blue Shield of South Carolina at the address on the Member's Identification Card; and,

  c. The appeal request must state that a formal appeal is being requested and include all pertinent information regarding the claim in question; and,

  d. An appeal must include the Member's name, address, social security number and any other information, documentation or materials that support the Member's appeal.

2. The Member may submit written comments, documents, or other information in support of the appeal, and will (upon request) have access to all documents relevant to the claim. A person other than the person who made the initial decision will conduct the appeal. No deference will be afforded to the initial determination.

3. If the appealed claim involves an exercise of medical judgment, the Corporation will consult with an appropriately qualified health care practitioner with training and experience in the relevant field of medicine. If a health care professional was consulted for the initial determination, a different health care professional will be consulted on the appeal.

4. The Corporation will make a final decision on the appeal within the time periods specified below:

  a. Pre-Service Claim.

    The Corporation will decide the appeal within a reasonable period of time, taking into account the medical circumstances, but no later than fifteen (15) days after receipt of the appeal. If the Member disagrees with the Corporation's decision, the Member can submit a second appeal within ninety (90) days after receipt of the final decision of the first appeal. The Corporation will decide the second appeal within a reasonable period of time, taking into account the medical circumstances, but no later than fifteen (15) days after receipt of the second appeal.

b.  Urgent Care Claim.

   The Member may request an expedited appeal of an Urgent Care Claim. This expedited appeal request may be made orally, and the Corporation will communicate with the Member by telephone or facsimile. The Corporation will decide the appeal within a reasonable period of time, taking into account the medical circumstances, but no later than seventy-two (72) hours after receipt of the Request for an expedited appeal.

c.  Post-Service Claim.

   The Corporation will decide the appeal within a reasonable period of time, but no later than thirty (30) days after receipt of the appeal. If the Member disagrees with the Corporation's decision, the Member can submit a second appeal within ninety (90) days after receipt of the final decision of the first appeal. The Corporation will decide the second appeal within a reasonable period of time, but no later than thirty (30) days after receipt of the second appeal.

d.  Concurrent Care Claim.

   The Corporation will decide the appeal of Concurrent Care Claims within the time frames set forth in Article XI (B)(4)(a-c) depending on whether such claim is also a Pre-Service Claim, an Urgent Care Claim or a Post-Service Claim.

5. Notice of Appeals Determination.

   a. If a Member's appeal is denied in whole or in part, the Member will receive notice of an Adverse Benefit Determination that will:

      i. State specific reason(s) for the Adverse Benefit Determination;

      ii. Reference specific provision(s) of this Plan of Benefits on which the benefit determination is based;

      iii. State that the Member is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claim for Benefits;

      iv. Describe any voluntary appeal procedures offered by the Corporation and the Member's right to obtain such information;

      v. Disclose any internal rule, guideline, or protocol relied on in making the Adverse Benefit Determination (or state that such information will be provided free of charge upon request);

      vi. If the reason for an Adverse Benefit Determination on appeal is based on a lack of Medical Necessity, Investigational or Experimental Services or other limitation or exclusion, explain the scientific or clinical judgment for the determination (or state that such information will be provided free of charge upon request); and

      vii. Include a statement regarding the Member's right to bring an action under section 502(a) of ERISA.

   b. The Member will also receive a notice if the claim on appeal is approved.

C.  **EXTERNAL REVIEW PROCEDURES**

   1. After a Member has completed the appeal process, a Member may be entitled to an additional, external review of the Member's claim at the Corporation's expense. An external review may be used to reconsider the Member's claim if the Corporation has denied, either in whole or in part, the Member's claim. In order to qualify for external review, the claim must have been greater than $500.00 and denied, reduced, or terminated because:

      a. It does not meet the requirements for Medical Necessity, appropriateness, health care setting, level of care or effectiveness; or,

      b. It is an Investigational or Experimental Service and it involves a life-threatening or seriously disabling condition.

   2. After a Member has completed the appeal process, (and an Adverse Benefit Determination has been made) such Member will be notified in writing of such Member's right to request an external review. The Member should file a request for external review within sixty (60) days of receiving the notice of the Corporation's decision on the Member's appeal. In order to receive an external review, the Member will be required to authorize the release of such Member's medical records (if needed in the review for the purpose of reaching a decision on Member's claim). If a Member needs assistance during the external review process, the Member may contact the South Carolina Department of Insurance at the following address and telephone number:

      South Carolina Department of Insurance
      P.O. Box 100105
      Columbia, S.C. 29202-3105
      1-800-768-3467

   3. Within five (5) business days of a Member's request for an external review, the Corporation will respond by either:

      a. Assigning the Member's request for an external review to an independent review organization and forwarding the Members records to such organization; or,

      b. Notifying the Member in writing that the Member's request does not meet the requirements for an external review and the reasons for the Corporation's decision.

   4. The external review organization will take action on the Member's request for an external review within forty-five (45) day after it receives the request for external review from the Corporation.

   5. Expedited external reviews are available if the Member's Physician certifies that the Member has a serious medical condition. A serious medical condition, as used in this Article XI (C)(5), means one that requires immediate medical attention to avoid serious impairment to body functions, serious harm to an organ or body part, or that would place the Member's health in serious jeopardy. If the Member may be held financially responsible for the treatment, a Member may request an expedited review of the Corporation's decision if the Corporation's denial of Benefits involves Emergency Medical Care and the Member has not been discharged from the treating Hospital.

## ARTICLE XII - GENERAL PROVISIONS

**AMENDMENT**

Upon thirty (30) days prior written notice, the Corporation may unilaterally amend this Plan of Benefits when required by Federal or State law. Increases in the Benefits provided or decreases in the Premium are effective without such prior notice. Notice of an amendment will be effective when addressed to the Employer. The Corporation has no responsibility to provide individual notices to each Member when an amendment to this Plan of Benefits has been made.

**AUTHORIZED REPRESENTATIVES**

A Provider may be considered a Member's authorized representative without a specific designation by the Member when the Pre-Authorization request is for Urgent Care Claims. A Provider may be a Member's authorized representative with regard to non-Urgent Care Claims only when the Member gives the Corporation or the Provider a specific designation, in a format that is reasonably acceptable to the Corporation to act as an authorized representative. If the Member has designated an authorized representative, all information and notifications will be directed to that representative unless the Member gives contrary directions.

**BLUECARD PROGRAM**

1. The Corporation, participates in the BlueCard Program. Whenever a Member accesses health care services outside the geographic area the Corporation serves, the Member's claims for those services may be processed through the BlueCard Program and presented to the Corporation for payment in conformity with network access rules of the BlueCard Program policies then in effect. Under the BlueCard Program, when a Member receives covered health care services within the geographic area served by a host Blue Cross and/or Blue Shield licensee (a Blue Cross and/or Blue Shield licensee other than the Corporation), the Corporation will remain responsible to the Employer for fulfilling its contract obligations. However, the host Blue Cross and/or Blue Shield licensee will only be responsible, in accordance with applicable BlueCard Program policies, if any, for providing such services as contracting with its participating providers and handling all interaction with its participating providers. The financial terms of the BlueCard Program are described generally below.

2. Liability Calculation Method Per Claim:

    a. The calculation of Member liability on claims for covered health care services incurred outside the geographic area the Corporation serves and processed through the BlueCard Program will be based on the lower of the provider's billed charges or the negotiated price the Corporation pays the host Blue Cross and/or Blue Shield licensee.

    b. The methods employed by a host Blue Cross and/or Blue Shield licensee to determine a negotiated price will vary among host Blue Cross and/or Blue Shield licensees based on the terms of each host Blue Cross and/or Blue Shield licensee's provider contracts. The negotiated price paid to a host Blue Cross and/or Blue Shield licensee by the Corporation on a claim for health care services processed through the BlueCard Program may represent:

        i. the actual price paid on the claim by the host Blue Cross and/or Blue Shield licensee to the health care provider; or,

ii. an estimated price, determined by the host Blue Cross and/or Blue Shield licensee in accordance with the BlueCard Program policies, based on the actual price increased or reduced to reflect aggregate payments expected to result from settlements, withholds, any other contingent payment arrangements and non-claims transactions with all of the host Blue Cross and/or Blue Shield licensee's health care providers or one or more particular providers; or,

iii. an average price, determined by the host Blue Cross and/or Blue Shield licensee in accordance with the BlueCard Program policies, based on a billed charges discount representing the host Blue Cross and/or Blue Shield licensee's average savings expected after settlements, withholds, any other contingent payment arrangements and non-claims transactions for all of its providers or for a specified group of providers. The average price under this section may result in greater variation to the Member and the Employer from the actual price under section (i), above, than would an estimated price under section (ii), above.

c. Host Blue Cross and/or Blue Shield licensees using either the estimated price under section (b)(ii), above, or the average price under section (b)(iii), above, will, in accordance with the BlueCard Program policies, prospectively increase or reduce such estimated price or average price to correct for over- or underestimation of past prices. However, the amount paid by the Member is a final price and will not be affected by such prospective adjustment.

d. Statutes in a small number of states may require a host Blue Cross and/or Blue Shield licensee either: (1) to use a basis for calculating Member liability for covered health care services that does not reflect the entire savings realized, or expected to be realized, on a particular claim; or, (2) to add a surcharge. Should any state statutes mandate liability calculation methods that differ from the negotiated price method or require a surcharge, the Corporation would then calculate Member liability for any covered health care services in accordance with the applicable state statute in effect at the time the Member received those services.

3. Recoveries under the Blue Card Program.

Under the BlueCard Program, recoveries from a host Blue Cross and/or Blue Shield licensee or from participating providers of a host Blue Cross and/or Blue Shield licensee can arise in several ways, including, but not limited to, anti-fraud and abuse audits, provider/hospital audits, credit balance audits, utilization review refunds, and unsolicited refunds. In some cases, the host Blue Cross and/or Blue Shield licensee will engage third parties to assist in discovery or collection of recovery amounts. The fees of such third party are netted against the recovery. Recovery amounts, net of fees, if any, will be applied in accordance with applicable BlueCard Program policies, which generally require correction on a claim-by-claim or prospective basis.

**CLERICAL ERRORS**

Clerical errors by the Corporation will not cause a denial of Benefits that should otherwise have been granted, nor will clerical errors extend Benefits that should otherwise have ended.

**DISCLOSURE TO PLAN SPONSOR**

The Employer's Group Health Plan will disclose (or will require Blue Cross to disclose) Member's Protected Health Information to the Employer only to permit the Employer to carry out plan administration functions for the Employer's Group Health Plan not inconsistent with the requirements of the HIPAA. Any disclosure to and use by the Employer will be subject to and consistent with the provisions of paragraphs 1 and 2 of this section.

1. Restrictions on Employer's Use and Disclosure of Protected Health Information.

    a. The Employer will neither use nor further disclose Member's Protected Health Information, except as permitted or required by the Plan Documents, as amended, or required by law.

    b. The Employer will ensure that any agent, including any subcontractor, to whom it provides Member Protected Health Information agrees to the restrictions and conditions of this Plan of Benefits, with respect to Member's Protected Health Information.

    c. The Employer will not use or disclose Member Protected Health Information for employment-related actions or decisions or in connection with any other benefit or employee benefit plan of the Employer.

    d. The Employer will report Employer's Group Health Plan any use or disclosure of Member Protected Health Information that is inconsistent with the uses and disclosures allowed under this section promptly upon learning of such inconsistent use or disclosure.

    e. The Employer will make Protected Health Information available to the Member who is the subject of the information in accordance with HIPAA.

    f. The Employer will make Member Protected Health Information available for amendment, and will on notice amend Member Protected Health Information, in accordance with HIPAA.

    g. The Employer will track disclosures it may make of Member Protected Health Information so that it can make available the information required for the Employer's Group Health Plan to provide an accounting of disclosures in accordance with HIPAA.

    h. The Employer will make its internal practices, books, and records, relating to its use and disclosure of Member Protected Health Information, to the Plan and to the U.S. Department of Health and Human Services to determine compliance with HIPAA.

    i. The Employer will, if feasible, return or destroy all Member Protected Health Information, in whatever form or medium (including in any electronic medium under the Employer's custody or control), received from the Employer's Group Health Plan, including all copies of and any data or compilations derived from and allowing identification of any Member who is the subject of the Protected Health Information, when the Member's Protected Health Information is no longer needed for the plan administration functions for which the disclosure was made. If it is not feasible to return or destroy all Member Protected Health Information, the Employer will limit the use or disclosure of any Member Protected Health Information it cannot feasibly return or destroy to those purposes that make the return or destruction of the information infeasible.

2. Adequate Separation Between the Employer and the Employer's Group Health Plan.

   a. Certain classes of employees or other workforce members under the control of the Employer may be given access to Member Protected Health Information received from the Employer's Group Health Plan or third party servicing the Employer's Group Health Plan.

   b. These employees will have access to Member Protected Health Information only to perform the plan administration functions that the Employer provides for the Employer's Group Health Plan or to assist Members.

   c. These employees will be subject to disciplinary action and sanctions, including termination of employment or affiliation with the Employer, for any use or disclosure of Member Protected Health Information in breach or violation of or noncompliance with the provisions of this section to this Plan of Benefits. Employer will promptly report such breach, violation or noncompliance to the Employer's Group Health Plan, and will cooperate with the Employer's Group Health Plan to correct the breach, violation or noncompliance, to impose appropriate disciplinary action or sanctions on each employee or other workforce member causing the breach, violation or noncompliance, and to mitigate any deleterious effect of the breach, violation or noncompliance on any Member, the privacy of whose Protected Health Information may have been compromised by the breach, violation or noncompliance.

   Employer certifies that this Plan of Benefits contains the provisions outlined above.

**GOVERNING LAW**

This Plan of Benefits (including the Schedule of Benefits) is governed by and subject to ERISA and any other applicable federal law. If ERISA or another federal law does not apply, this Plan of Benefits is governed by and subject to the laws of the State of South Carolina. If federal law conflicts with any state law, then such federal law shall govern. If any provision of this Plan of Benefits conflicts with such law, this Plan of Benefits shall automatically be amended solely as required to comply with such state or federal law, and the Corporation shall be entitled to adjust the Premium upon thirty-one (31) days written notice.

**IDENTIFICATION CARD**

A Member must present their Identification Card prior to receiving Benefits.

Identification Cards are for identification only. Having an Identification Card creates no right to Benefits or other services. To be entitled to Benefits, the cardholder must be a Member whose Premium has been paid. Any person receiving Covered Expenses to which the person is not entitled will be responsible for the charges.

**INCONTESTABILITY**

The validity of the Plan of Benefits may not be contested after it has been in force for two (2) years from its date of issue. No statement relating to insurability, except fraudulent misstatements, made by any Member may be used in contesting the validity of the coverage with respect to which the statement was made after the coverage has been in force for a period of two (2) years unless it is contained in a written instrument signed by the person making the statement. The provision does not preclude assertion at any time of defenses based upon the person's ineligibility for coverage under the Plan of Benefits or upon other provision in the Plan of Benefits.

**INFORMATION AND RECORDS**

The Corporation is entitled to obtain records and other information as it may reasonably require from any Member or Provider incident to the treatment, payment and health care operations for the administration of the Benefits hereunder. This includes medical and Hospital records, the attending Physician's certification as to the Medical Necessity for care or treatment, and/or any other requested documentation or information. Payment for benefits may be denied until the requested records, documentation or information is received.

**LEGAL ACTIONS**

No Member may bring an action at law or in equity to recover on this Plan of Benefits until such Member has exhausted the appeal process as set forth in Article XI. No such action may be brought any later than six (6) years after the time written proof of loss is required to be furnished.

**MEMBERSHIP APPLICATION**

The Corporation will only accept a Membership Application submitted by the Employer on behalf of its Employees. The Corporation will not accept Membership Applications directly from Employees or Dependents.

**NEGLIGENCE OR MALPRACTICE**

The Corporation does not practice medicine. Any medical treatment, service or Medical Supplies rendered to or supplied to any Member by a Provider is rendered or supplied by such Provider and not by the Corporation. The Corporation is not liable for any improper or negligent act, inaction or act of malfeasance of any Provider in rendering such medical treatment, service, Medical Supply or medication.

**NOTICES**

Except as otherwise provided in this Plan of Benefits, any notice under this Plan of Benefits may be given by United States mail, postage paid and addressed:

1. To the Corporation:

    Blue Cross and Blue Shield of South Carolina
    Post Office Box 100300
    Columbia, South Carolina 29202

2. To a Member: To the last known name and address listed for the Employee related to such Member on the Membership Application. Members are responsible for notifying the Corporation of any name or address changes within thirty-one (31) days of the change.

3. To the Employer: To the name and address last given to the Corporation. The Employer is responsible for notifying the Corporation of any name or address change within thirty-one (31) days of the change.

**NO WAIVER OF THE CORPORATION'S RIGHTS**

On occasion, the Corporation may, at its option, choose not to enforce all of the terms and conditions of this Plan of Benefits. Such a decision does not mean the Corporation waives or gives up any rights under this Plan of Benefits in the future.

**OTHER INSURANCE**

Each Member must provide the Corporation with information regarding all other health insurance coverage to which such Member is entitled.

**PAYMENT OF CLAIMS**

A Member is expressly prohibited from assigning any right to payment of Covered Expenses or any payment related to Benefits. The Corporation may pay all Covered Expenses directly to the Employee upon receipt of due proof of loss. Where a Member has received Benefits from a Participating Provider, the Corporation will pay Covered Expenses directly to such Participating Provider.

**PHYSICAL EXAMINATION**

The Corporation has the right to have examined, at its own expense, a Member whose injury or sickness is the basis of a claim (whether Pre-Service, Post-Service, Concurrent or Urgent Care). Such physical examination may be made as often as the Corporation may reasonably require while such claim for Benefits or request for Pre-Authorization is pending.

**REPLACEMENT COVERAGE**

If this Plan of Benefits replaced the Employer's prior Plan, all eligible persons who were validly covered under that Plan on its termination date will be covered on the Plan of Benefits Effective Date of this Plan of Benefits, provided such persons are enrolled for coverage as stated in Article II.